UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| NANCY MICHELLE WILLIAMS, | |
| Plaintiff, | |
| v. | CAUSE NO.: 4:19-CV-81-TLS |
| ANDREW SAUL, Commissioner of the Social Security Administration, | |
| Defendant. | |

**OPINION AND ORDER**

The Plaintiff Nancy Michelle Williams seeks review of the final decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits. The Plaintiff argues that the Administrative Law Judge (ALJ) erred in evaluating the Plaintiff's subjective complaints; failed to adequately account for the Plaintiff's moderate limitations in concentrating, persisting, and maintaining pace; failed to provide limitations for the Plaintiff's off-task behavior or absenteeism in the RFC; and failed to award even a limited period of disability during which the Plaintiff could not sustain full-time work. For the reasons set forth below, the Court finds that remand is required for further proceedings.

**PROCEDURAL BACKGROUND**

On February 18, 2016, the Plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability beginning on January 15, 2015. AR 10, 160, ECF No. 12. The claims were denied initially and on reconsideration. *Id*. at 71, 86. The Plaintiff requested a hearing, which was held before the ALJ on April 10, 2018. *Id*. 30-61, 104-05. On October 11, 2018, the ALJ issued a written decision and found the Plaintiff not disabled. *Id.* 7-19. On August 22, 2019, the Plaintiff filed her Complaint [ECF No. 1] in this Court, seeking

reversal of the Commissioner's final decision. The Plaintiff filed an Opening Brief [ECF No. 18], the Commissioner filed a Response [ECF No. 19], and the Plaintiff filed a Reply [ECF No. 20].

## THE ALJ'S DECISION

For purposes of disability insurance benefits, a claimant is "disabled" if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a).

An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff has not engaged in substantial gainful activity since January 15, 2015, the alleged onset date. AR 12. The Plaintiff also meets the insured status requirements of the Social Security Act through December 31, 2020. *Id.*

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii), (c). Here, the ALJ determined that the Plaintiff has the severe impairments of fibromyalgia, migraine headaches, obesity, and depression. AR 12.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings in appendix 1 to subpart P of part 404 of this chapter." 20 C.F.R. § 404.1520(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. § 404.1520(a)(4)(iii), (d). Here, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing, indicating that she considered Listings 11.0 et. seq., 12.04, and 14.09. AR 13-14.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1520(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry up to 20 pounds occasionally, 10 pounds frequently, stand and/or walk about 2 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday with normal breaks. The claimant must never climb ladders, ropes, or scaffolds, and only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. She must avoid concentrated exposure to extreme cold and heat, wetness, humidity, noise, fumes, and hazards. The claimant is capable of performing simple tasks (20 CFR 404.1567(b)).

AR 15.

The ALJ then moves to step four and determines whether the claimant can do her past relevant work in light of the RFC. 20 C.F.R. § 404.1520(a)(4)(iv), (f). In this case, the ALJ noted that the Plaintiff was unable to perform any past relevant work. AR 18.

3

If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" in the national economy given the RFC and the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), (g). Here, the ALJ found that the Plaintiff is not disabled because the Plaintiff can perform significant jobs in the national economy, such as a telephone information clerk, an order clerk, and a document preparer. AR 19. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1512.

The Plaintiff sought review of the ALJ's decision by the Appeals Council, and the Appeals Council subsequently denied review. AR 1-6. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). The Plaintiff now seeks judicial review under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's

decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539 (quotations omitted); *see also Moore*, 743 F.3d at 1121 ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

In this appeal, the Plaintiff raises multiple arguments, but the Court need only address one that compels remand. The ALJ erred in analyzing the Plaintiff's subjective symptoms with regard to her headache and migraine pain, as the ALJ mischaracterized and cherry-picked medical evidence to support her findings. The ALJ's reliance on a single treatment note while ignoring the majority of the evidence in the record requires remand.

A. **Subjective Symptoms**

The ALJ must consider a claimant's statements about her symptoms, such as pain, and how the symptoms affect her daily life and ability to work. *See* 20 C.F.R. § 404.1529(a); SSR 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017). Subjective allegations of disabling symptoms alone cannot support a finding of disability. SSR 16-3P, 2017 WL 5180304, at *2. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;

(2) Location, duration, frequency, and intensity of pain or other symptoms;

(3) Precipitating and aggravating factors;

(4) Type, dosage, effectiveness, and side effects of any medication;

(5) Treatment, other than medication, for relief of pain or other symptoms;

(6) Other measures taken to relieve pain or other symptoms;

(7) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. §404.1529(c)(3). Here, the Plaintiff asserts that the ALJ made multiple errors in discussing her subjective symptoms, particularly with regard to her migraine and headache pain.

The Plaintiff asserts that the ALJ erred in evaluating her subjective symptoms, specifically related to her migraine headaches. The ALJ found that the Plaintiff's headaches were "categorically 'mild' rated pain 2 out of 10, happening one to five days a month." AR 17. The ALJ found that the Plaintiff's headaches were "improved" and "stable" when treated with Pamelor and Propranolol. *Id.* at 17. The ALJ then stated that "the clinical records are not supportive of disabling limitations, though the records do support ongoing treatment for physical

impairments." *Id.* The Plaintiff argues that the ALJ mischaracterized and cherry-picked evidence in determining that the Plaintiff's headaches were stable and mild.

In September 2010, the Plaintiff reported that she was experiencing three mild headaches per week, one moderate headache per week, and one severe headache approximately every six weeks. *Id.* at 364. In August 2014, the Plaintiff was admitted to the hospital for a migraine. *Id.* at 532. She reported a severe headache for 8 days, stating her pain was a 10 out of 10. *Id.* During that hospital stay, the Plaintiff received a dihydroergotamine ("DHE") injection treatment. *Id.* at 532, 535. After 48 hours of DHE treatment, the Plaintiff reported an improvement in her pain to a 1-2 out of 10. *Id.* at 532. In 2015 she was being treated for "chronic allergic rhinosinusitis with recurring acute infections." *Id.* at 436. The Plaintiff's sinus infections were exacerbated by her frontal headaches. *Id.* at 436. Her doctor found her to be a good candidate for surgical intervention, as "she continue[d] to be quite symptomatic including facial and frontal headaches." *Id.* at 443. The Plaintiff underwent "extensive sinus surgery" in late June 2015, after which she continued to suffer from headaches. *Id.* at 452, 459, 461, 467, 475.

In February 2016, the Plaintiff once again was admitted to the hospital for migraines and was put on DHE protocol. *Id.* at 648. The Plaintiff was "directly admitted from home" at the request of her neurologist. *Id.* at 653. She reported pain at 8 out of 10, but it worsened with standing. *Id.* In March 2016, she received 195 units of Botox via injections as treatment for her migraines. *Id.* at 728. She reported improvement in headaches after one of her rounds of Botox injections. *Id.* at 731. By March 2018, however, the Plaintiff indicated that she was having headaches daily, frequently severe, that were lasting for five days at a time. *Id.* at 965. She reported that the Botox injections were no longer working. *Id.* She reported being in the ER three days after her previous Botox injection due to a migraine. *Id.* The Plaintiff kept headache

7

calendars throughout most of 2016 and 2017. *Id.* at 1015–24. By August and September 2017, she indicated headaches most days, frequently severe, and lasting 13-24 hours with nausea, vomiting, light sensitivity, dizziness/vertigo, and anxiety and confusion. *Id.* at 1015, 1016.

  At the hearing, the Plaintiff testified that she "almost always [has] a headache." *Id.* at 41. She stated that bright lights, loud noises, gluten, weather changes, hormonal changes, and dehydration all make her headaches worse. *Id.* She further testified that medication and going into a dark, quiet room and laying down with her eyes closed is what makes her pain better. *Id.* The Plaintiff testified that two rounds of Botox helped her, but the third round made her headaches worse. *Id.* at 43. She testified that she has four bad days per week on average, and during those days she spends 90% of her day in bed. *Id.* at 48. She stated that bad days are often due to migraines. *Id.* She stated that she has migraines six days a week, and the migraines last anywhere from six to twenty-four hours. *Id.* at 52. The Plaintiff testified that even with medication, her pain only drops to a 5 out of 10, and that it takes an hour for the medications to start working. *Id.*

  The medical evidence does not support the finding that the Plaintiff's headaches are "categorically 'mild' rated pain 2 out of 10, happening one to five days per month." *Id.* at 17. Moreover, there is no evidence that the Plaintiff's headaches were "improved, and migraines 'stable'" while taking Pamelor and Propranolol. *Id.* To support these findings, the ALJ cites to office treatment records from Dr. Bakul Patel, the Plaintiff's neurologist, from April 2017 through February 2018. *See id.* Specifically, in February 2018, there is one mention that the Plaintiff's headaches were mild, at a pain level of 2 out of 10, occurring 1-5 days per month. *Id.* at 1028. At that same visit, Dr. Patel found that her migraines were stable while taking Pamelor. *Id.* at 1029.

However, the treatment notes from a January 2018 visit noted headaches at a pain level of 4 out of 10, occurring 1-5 days per month, and that the Plaintiff could not continue taking Propranolol due to her allergies. *Id.* at 1033–35. Moreover, her 2017 neurologist treatment notes describe continuously worsening headaches. In June of 2017, the Plaintiff reported headache pain at a 6 out of 10, occurring 26-31 days per month. *Id.* at 1058. She was prescribed olanzapine at this appointment. *Id.* at 1060. In July of 2017, the Plaintiff reported headaches at a pain level of 7 out of 10, occurring 6-10 days per month (with severe headaches occurring 1-5 days per month). *Id.* at 1053. The medications prescribed for her headaches and migraines were altered to Inderal and Cambia. *Id.* at 1055. In September 2017, the Plaintiff's headaches were at a 5 out of 10, occurring 1-5 days per month, and she was taking tramadol and diclofenac for her headaches and migraines. *Id.* at 1048–50. By October 2017, the Plaintiff was reporting migraines at a 9 out of 10 pain level occurring 16-20 days per month (with severe headaches occurring 11-15 days per month), usually starting in the morning and getting progressively worse throughout the day. *Id.* at 1043. At this appointment, the Plaintiff's medications were switched again, this time to Zipsor and Zembrace Symtouch. *Id.* at 1045. In November of 2017, the Plaintiff reported headaches at a pain level of 6 out of 10, occurring 6-10 days per month, and her medication was again listed as olanzapine, indicating frequent medication changes for her migraines. *Id.* at 1038–40. Frequent medication changes throughout a nine-month period of treatment indicate that the Plaintiff's migraines were not stable on any of the medications. Finally, the Plaintiff reported worsening headaches throughout 2017. *Id.* at 1015, 1016.

The ALJ impermissibly cherry picked one treatment note from February 2018 while ignoring the medical evidence that contradicted the ALJ's finding that the Plaintiff's migraines were stable, infrequent, and consistently at a low pain level. *See Bates v. Colvin,* 736 F.3d 1093,

9

1099 (7th Cir. 2013) ("An ALJ cannot rely only on the evidence that supports her opinion." (citing *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994))); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009))). Further, the ALJ did not properly consider the Plaintiff's migraine and headache evidence in analyzing her subjective symptoms. This error requires remand. *Denton*, 596 F.3d at 425.

### B. Other Arguments

The Plaintiff makes several other arguments regarding her RFC and the ALJ's failure to find even a limited period of disability. However, since remand is required due to the ALJ's mischaracterization of the Plaintiff's headaches and migraines, these issues need not be addressed at this time. Proper consideration of the Plaintiff's subjective symptoms and the evidence of her headaches and migraines may alter the ALJ's RFC determination.

### C. Award of Benefits

The Plaintiff asks the Court to reverse and remand for an award of benefits, or, in the alternative, for further proceedings. "An award of benefits is appropriate … only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion – that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005)). Based on the discussion above, an immediate award of benefits is not appropriate.

## CONCLUSION

For the reasons stated above, the Court GRANTS the relief sought in the Plaintiff's Brief [ECF No. 18] and REVERSES the decision of the Commissioner. The Court REMANDS this matter for further proceedings consistent with this Opinion. The Court DENIES the Plaintiff's request to award benefits.

SO ORDERED on September 15, 2021.

s/ Theresa L. Springmann  
JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT
